IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DREW, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 20-cv-00402 |
| Plaintiff, | ) ) | |
| vs. | ) ) | Hon. Sharon Johnson Coleman |
| AMERICAN DIRECTIONS RESEARCH GROUP, | ) ) ) ) | Magistrate Young Kim |
| Defendant. | ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Michael Drew, through counsel, responds to Defendant American Directions Research Group's ("ADRG") motion to dismiss, [ECF 30, 31] and further states as follows:

**Introduction**

Drew is one of countless American consumers that receive unsolicited spam text messages on their cell phone on a daily basis. These texts are harassing and waste the consumer's time, energy, and money. Unscrupulous business owners purchase or compile lists of cell phone numbers and personal information and send out mass texts using combinations of computer hardware and software. Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") to rein in the equivalent practice of robocalling. The act's prohibitions also apply to text messages like the one Drew received from ADRG. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 Order"), 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) (TCPA applies to both "voice calls and text calls to wireless numbers"); *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016) (clarifying that text

1

messages are covered). It is illegal to send text messages using an automated telephone dialing system ("ATDS") to anyone's cell phone without their "prior express consent." 47 U.S.C. § 227(b)

Drew's amended complaint, [ECF 25], states a claim for violations of the TCPA. ADRG only argues that the complaint does not plausibly allege they used an ATDS to send the text to Drew. ADRG misconstrues the complaint and misunderstands the relevant authority. At bottom, ADRG asks this court to ignore well-pleaded facts and to draw inferences in their favor. The complaint cannot be dismissed.

## Argument & Authority

I. **Automated Telephone Dialing Systems**

   a. **A Brief History**

The TCPA only prohibits unconsented calls and texts to cell phones made using an 'Automated Telephone Dialing System.' 47 U.S.C. § 227(b). The act defines an ATDS as:

> [E]quipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.
> 47 U.S.C. 227(a)(1)

Interpreting that definition has proved vexing for courts and the FCC[1] alike. *See, e.g., Pinkus v. Sirius XM Radio, Inc.,* 319 F. Supp. 3d 927, 929-32 (N.D. Ill. 2018) (recounting history of FCC's regulations interpreting ATDS). In 2018, the D.C. Circuit Court of Appeals issued their decision in *ACA Int'l v. FCC*, 885 F.3d 687 (2018). The *ACA Int'l* decision involved a direct appeal of a 2015 FCC order that answered two fundamental questions about what equipment

---

[1] The FCC is the federal agency that issues the implementing rules and regulations. 48 U.S.C. § 227(b)(2)

2

could be considered an ATDS: 1) when does equipment have the "capacity" to perform autodialer functions; and, 2) what exactly are those functions? *ACA Int'l*, 885 F.3d at 695. The D.C. Circuit held that the FCC's treatment of those questions could not be sustained. *Id.* at 700, 703.

The exact reasoning behind the *ACA Int'l* decision is less relevant here than the effect it had on all FCC orders which related to the definition of an ATDS and the divergent body of case law that had grown up around the same. The Seventh Circuit recently made clear that *ACA Int'l* invalidated *all* previous FCC orders and guidance which related to the issues decided in that case. *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020). The Court noted it was thus not bound by any previous orders or their own precedent that had followed those orders regarding the definition of an ATDS. *Id.* (referencing *Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017)). In sum, the *Gadhelak* decision "interpret[ed] the statute's text as though for the first time." *Gadhelak*, 950 F.3d at 463; *see also, Marks v. Crunch San Diego, LLC,* 904 F.3d 1041, 1049 (9th Cir. 2018) ("…only the statutory definition of ATDS as set forth by Congress in 1991 remains.")

**b. *Gadelhak's* Definition of an ATDS**

Because the *Gadhelak* Court was writing on a blank slate, their definition constitutes the only binding authority as to the definition of an ATDS in this Circuit: an automatic telephone dialing system is equipment which has the capacity to *either*: 1) store telephone numbers using a random or sequential number generator; *or,* 2) produce telephone numbers using a random or sequential number generator. *Id.* 460. In adopting this interpretation, the Court noted both the inscrutability of the statutory text[2] and that their interpretation also posed some "difficulties." *Id.* at 465.

---

[2] "The wording of the provision that we interpret today is enough to make a grammarian throw down her pen." *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 460 (7th Cir. 2020)

3

Consequently, the Court examined in detail the three other competing definitions offered by other Circuits and the parties before rejecting each of them – with the upshot being that their holding was the *least* problematic. *See, id.* at 465-68.

## II. The Complaint Adequately Alleges ADRG Used an ATDS

### a. ADRG Misstates the Holding of Gadelhak

As an initial matter, ADRG misstates the holding of *Gadelhak* and the definition of an ATDS. Their brief conflates and confuses a series of differing interpretations that were all rejected in *Gadelhak*.:

- They argue that Drew was required to allege that their dialing equipment "could automatically generate random or sequential telephone numbers." [ECF 31 at 4];
- "...the Seventh Circuit has held is a system that can generate or store random or sequential numbers, or can send texts…" [ECF 31 at 3];
- "Nothing in his amended complaint suggests that the dialing equipment had the capacity to generate and text random or sequential numbers." [ECF 31 at 4-5];
- "If American Directions is texting numbers from a purchased list, it is not using a system that is generating or storing random or sequential numbers, and therefore is not using an ATDS." [ECF 31 at 7]

As explained above, this was not *Gadelhak's* holding. In fact, the Court considered and explicitly rejected an interpretation that required an ATDS to generate random or sequential *telephone* numbers or required it to store random or sequential numbers. The district court itself had based its holding that exact interpretation, but the Seventh Circuit found that the "words of Congress, as written, do not permit this…interpretation." *Gadelhak*, 950 F.3d at 466.

4

Though perhaps nuanced, *Gadelhak's* holding was extremely simple: the phrase "using a random or sequential number generator" modifies both the verb "store" and the verb "produce." *Id.* at 460. Thus, equipment that stores telephone numbers using either a random or sequential number generator is, under binding Seventh Circuit authority, an ATDS. Much of ADRG's brief relies on their misunderstanding of the relevant definition, and to the extent it does, it cannot be granted on that basis.

**b. The Complaint Contain Well-Pleaded Facts and the Reasonable Inference Drawn from them Is That ADRG Used an ATDS to Send the Illegal Text Messages**

Drew has alleged that ADRG's equipment stores telephone numbers using a random or sequential number generator. [ECF 25 at ¶¶17-18]. Specifically, ADRG uses a computer software system to store the phone numbers it will target in its mass-text campaigns, and because almost all computer software that stores information in databases or lists uses either random or sequential number generators to store those phone numbers, ADRG's equipment is an ATDS. *Id.* These are well-pleaded facts and not legal conclusions and must be taken as true at this stage.

Even if the court finds that Plaintiff's single sentence tracking the statutory language is conclusory, the claim is supported by additional well-pleaded allegations and thus it should not be dismissed. *See, Zeidel v. Nat'l Gas & Elec., Ltd. Liab*. Co., No. 18 CV 06792, 2019 U.S. Dist. LEXIS 83988, at *6 (N.D. Ill. May 17, 2019) ("Although the complaint does recite the TCPA's definition of an ATDS," additional details about the content and nature of the calls is sufficient to defeat a motion to dismiss).

ADRG is correct that "Courts in this District have applied different requirements to state a TCPA claim." [ECF 31 at 5]; *see also, Jara v. Redbox Automated Retail, LLC,* No. 19 C 4532, 2020 U.S. Dist. LEXIS 13662, at *4 (N.D. Ill. Jan. 28, 2020) ("Courts in this district have

5

reached divergent conclusions regarding the level of detail with which plaintiffs must allege use of an ATDS in order to survive the motion to dismiss stage." And collecting cases). But ADRG misstates the nature of the divergence. On one end are decisions that find that a bare allegation that the defendant "used an ATDS" is sufficient because the plaintiff has not had the benefit of discovery. *E.g., Czerniak v. Servis One, Inc.,* No. 15-CV-06473, 2017 U.S. Dist. LEXIS 49936, at *9 (N.D. Ill. Mar. 31, 2017) (Tharp Jr., J.). On the other are decisions that require some additional, independent facts beyond simply stating an ATDS was used. *E.g., Izsak v. Draftkings, Inc.,* 191 F.Supp.3d 900, 904 (N.D. Ill. 2016) (Wood, J.).

Even if this court follows the latter, more-demanding, line of cases, "it suffices for a plaintiff to supply facts giving rise to a reasonable expectation that discovery will reveal evidence that the defendant used an ATDS." *Jara,* No. 19 C 4532, 2020 U.S. Dist. LEXIS 13662, at *5 (internal quotation marks omitted). The requisite level of detail is not high, and Drew's allegations are more than adequate. *See, e.g., Izsak v. Draftkings, Inc.,* 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016) ("For example, a plaintiff could describe the promotional content or the generic, impersonal nature of the text message allegedly sent using an ATDS. A plaintiff might also allege that identical messages were sent to many potential customers at the same time."); *see, also, Torres v. Nat'l Enter. Sys.,* No. 12 C 2267, 2012 U.S. Dist. LEXIS 110514, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (requiring the plaintiff to include details of the device at the pleading stage would make defendants "virtually immune to TCPA claims, which clearly is not what was intended by Congress in creating the TCPA").

Drew has alleged that ADRG buys lists of individual's cell phone numbers for their mass-text business. [ECF 25 at ¶11-13]. They store those lists electronically. *Id.* at ¶¶12, 17. Almost all computers storing information in lists or databases use random or sequential number generators

6

to store that information. [ECF 25 at ¶17-18]. The text message itself was clearly sent as part of a mass-text campaign ("We're texting *voters*" and encouraging them to "participate" in an online survey) (*Id.* at ¶10); it was unsolicited by Drew (*Id.* at ¶16); and from a number he didn't know (*Id.*); and it was *impersonal* (*Id.*). ADRG makes much of the fact that the text is addressed to 'MICHAEL' – they argue that it means it is not impersonal or unsolicited. [ECF 31 at 7]. Because Drew also alleged that ADRG purchases lists of telephone numbers, a very reasonable inference is that list also contained other personal information, including Drew's first name.

Thus, rather than merely stating that ADRG "uses an ATDS" the complaint is replete with other detailed supporting facts which, taken as true, establish that Defendant used an ATDS to send the illegal texts. Discovery regarding the technology used by ADRG will undoubtedly provide evidence that ADRG used (or did not use) an ATDS. Moreover, viewing the complaint as a whole, it is a highly plausible inference that American Directions *Research* Group's entire business model is purchasing lists of cell phone numbers and subscribers and sending out mass texts to those numbers to profit off of the online surveys recipients are directed to.

**c. There is No "Human Intervention" Pleading Requirement**

Lastly, ADRG argues, based almost entirely on non-binding, out-of-circuit opinions[3], that Drew was required to allege the system sends text messages without human intervention. There are two fundamental flaws with this line of reasoning. First, *Gadelhak* constitutes the entire binding definition of an ATDS in the Seventh Circuit and does not mention 'human intervention' at all. Second, each case cited by ADRG was deciding a motion for summary judgement, not a motion to dismiss.

---

[3] Defendants do cite to *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017). But the Court in *Gadelhak* specifically noted that "[n]either *Blow* nor any FCC order binds us in this case." *Gadelhak,* 950 F.3d at 463.

The first issue is dispositive. There is no mention of human intervention in the statute or implementing regulations. 47 U.S.C. § 227(a)(1); 47 C.F.R. § 64.1200(f)(2). Instead, courts adopted the concept of "human intervention" from the FCC's January 4, 2008 Order (*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559, 566 (F.C.C. Jan. 4, 2008)) and the July 10, 2015 Order (*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 et al.*, 30 FCC Rcd 7961, 7975 (F.C.C. July 10, 2015)). *See, also, ACA Int'l v. FCC,* 885 F.3d 687, 694 (2018) (discussing the 2008 and 2015 orders).

However, as discussed above, *ACA Int'l* set aside the FCC's guidance and orders regarding the definition of an autodialer. *ACA Int'l*, 885 F.3d at 700, 703. This included any orders or guidance regarding 'human intervention.' *Id.* In particular, the D.C. Circuit noted that the FCC had adopted two contrary positions in their orders: the FCC explained a basic function of an autodialer is to dial numbers without human intervention *and* the FCC refused to clarify that an autodialer must have the capacity to dial numbers without human intervention. *Id.* at 694. The Court found that the FCC's 2015 ruling, in "describing the functions a device must perform to qualify as an autodialer, fails to satisfy the requirement of reasoned decisionmaking." *Id.* at 703.

As noted above, the Seventh Circuit has since found that *ACA Int'l* set aside all of the FCC's prior Orders with regards to the definition of an autodialer. *Gadelhak,* 950 F.3d at 463. Those Orders were the only legal tether for any "human intervention" requirement. Accordingly, because the Seventh Circuit was "interpret[ing] the statute's text for the first time," *id.,* and the definition they provide does not contain any mention of "human intervention" ADRG's argument fails. Put simply, *Gadelhak*'s definition of an autodialer is the *only* definition of an autodialer in this Circuit and it does not include a human intervention test.

8

Regardless, Defendants have not pointed to any case dismissed because the plaintiff failed to allege a lack of "human intervention." Their citations are all to cases decided on summary judgment and turned on the actual level of human intervention in each case following discovery. To the extent there is any pleading requirement, Plaintiff's allegations that ADRG's equipment "automatically" sent the text messages plainly implies a lack of human intervention. [ECF 25 at ¶17].

## Conclusion

Drew's complaint plausibly alleges that he was texted without his consent by American Directions Research Group and that they used an automatic telephone dialing system to send the text. ADRG's motion is founded on their misapprehension of the relevant case law. Additionally, they ask this court to ignore the well-pleaded facts contained within and draw reasonable inferences in their favor rather than the Plaintiffs. Drew respectfully requests this court deny ADRG's motion or in the alternative all him to amend his complaint to cure any deficiencies.

    Respectfully submitted,

    By: s/Celetha Chatman
    One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
20 N. Clark Street, Suite 3100
Chicago, IL 60602
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2020 I electronically filed the foregoing document using the CM/ECF system which will send a copy to all counsel of record.

By: s/Celetha C. Chatman<br>
One of Plaintiff's Attorneys

Michael J. Wood
Celetha C. Chatman
**Community Lawyers LLC**
20 N. Clark Street, Suite 3100
Chicago, IL 60602
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com